**CHRISTMANN & WELBORN, a joint venture between John J. Christmann and J. M. Welborn, Plaintiffs,**

v.

**DEPARTMENT OF ENERGY, et al., Defendants.**

**Civ. A. No. CA–5–79–7.**

United States District Court, N.D. Texas, Lubbock Division.

June 22, 1984.

---

Joe A. Rudberg, Stephen S. Livingston, J. W. Bullion, Thompson & Knight, Dallas, Tex., James H. Milam, Crenshaw, Dupree & Milam, Lubbock, Tex., James Craig Dodd, Dodd & Helm, Enid, Okl., for plaintiffs.

Ellen P. Rosenberg-Blatt, Larry P. Ellsworth, Gary A. Gegenheimer, Rodney L. Solenberger, Arthur S. Weissbrodt, U.S. Dept. of Energy, Alice K. Daniel, Shalom Brilliant, Max Vassanelli, U.S. Dept. of Justice, Washington, D.C., James A. Rolfe, U.S. Atty., Dallas, Tex., Roger L. McRo-

berts, Asst. U.S. Atty., Lubbock, Tex., for federal defendants.

Robert M. Roller, Graves, Dougherty, Hearon & Moody, Austin, Tex., Coke & Coke, Dallas, Tex., for defendants Helen G. Cherry, A. W. Cherry Trust and Bonanza Oil Co.

Jack McClendon, McClendon & Richards, Lubbock, Tex., for defendants Florence S. Cherry, J. Blair Cherry, Jr. Trust and Rosemary Cherry Patterson Trust.

William P. Cannon, William G. Lowerre, William G. Riddoch, William G. Winter, Houston, Tex., M. Warlick Carr, Carr, Evans, Fouts & Hunt, Lubbock, Tex., for defendant Shell Oil Co.

## MEMORANDUM ORDER AND FINAL JUDGMENT

WOODWARD, Chief Judge.

On June 19, 1984, a hearing was held on all pending motions in the above-entitled and numbered cause and the court, after considering the pleadings, administrative record, motions, briefs and supporting documents and affidavits of all the parties and the argument of counsel, enters the following memorandum and order:

### I

This action was commenced by the plaintiff, Christmann and Welborn, a joint venture between John J. Christmann and J. M. Welborn, (C & W) against the Department of Energy (DOE)[1] and various government officials to challenge a final Decision and Order issued by DOE on December 12, 1978. C & W also brought claims against Shell Oil Company, which were subsequently dismissed by an agreed motion of C & W and Shell. In addition, C & W sought contribution from the other owners of working mineral interests.

In the administrative proceedings reviewed by this court, DOE had determined that C & W violated the Mandatory Petroleum Price Regulations, 10 C.F.R. Part 212, by charging its customer Shell Oil Company a price in excess of that permitted by the ceiling price rule, 10 C.F.R. § 212.73 for domestic crude oil from an enhanced recovery unit operated by C & W. This unit, the CWC Prentice Unit, had been formed effective September 1, 1973, from eight separate leases, all of which had production and sales of crude oil during 1972. DOE concluded in its Remedial Order that C & W's treatment of the unit as having a zero base production control level (BPCL) and its sales of all crude oil from the unit from March 1974 through August 1976, resulted in overcharges to Shell in the amount of $3,367,990.92. C & W was ordered to make restitution in such amount to Shell and to recalculate allowable revenues from crude oil sales produced from the unit to Shell for the period September 1976 to the date of the remedial order and make restitution of that excess also. The remedial order further directed C & W to pay interest amounts and maintain records to show compliance (R. 32–33, 404).

In the present proceeding, both C & W and DOE sought summary judgment, and on December 20, 1982, the court granted the government's motion, affirming the administrative Decision and Order in all respects except the appropriate remedy, which was remanded to DOE for consideration in light of decontrol. In the December 20th order, C & W was directed to pay into an escrow account the amounts required by a Stipulation of Stay, which C & W had entered into on January 29, 1979. C & W was also ordered by the court to pay into the escrow account interest amounts, which had accrued since the date of the Stipulation, and to furnish within 90 days an accounting to DOE of all overcharge amounts from September 1, 1976 through January 27, 1980. C & W's claims against the non-government defendants were severed.

Several post-judgment motions were filed, and on March 17, 1983, the court granted in part one of C & W's motions for

---

1. The acronym "DOE" will be used to include the Economic Regulatory Administration Office of Hearings and Appeals and DOE's predecessor agencies, the Federal Energy Administration, Cost of Living Council and Federal Energy Office.

reconsideration, relieving C & W of liability for the overpayments made to the other interest owners.[2] In a second order of the same date, the court directed C & W to furnish to the court and opposing counsel by April 18, 1983, a complete statement and accounting, showing the amount of monies that had accrued under the original escrow agreement, which then was to be reduced to C & W's percentage of interest alone.

## II

The motions, which remain pending and which shall be disposed of here, are C & W's Motion to Stay Escrow Requirement, DOE's Motion for Reconsideration of the Court's Order of March 17, 1983, C & W's Motion for Relief from Final Order, and DOE's Motion to Strike Certain Affidavits.

For the reasons below, the court is of the opinion that all motions should be and the same are hereby DENIED, except C & W's Motion to Stay Escrow Requirement which is granted in part as discussed below.

## III

### A.

The court's order of December 20, 1982, granting DOE's motions for partial summary judgment and for partial remand was grounded on *Pennzoil v. Department of Energy*, 680 F.2d 156 (TECA 1982), in which the Temporary Emergency Court of Appeals found that Ruling 1975–15 simply made explicit what was implicit in the property definition in the regulations from the beginning and therefore was retroactively applicable. The *Pennzoil* court refused to apply estoppel against DOE. *Id.* at 176–77; *also see id.* at 161 and n. 8.

C & W's basic objection to the previous disposition of this case is the court's refusal to apply equitable estoppel against DOE under the facts and circumstances of this case. C & W contends that *Pennzoil* is distinguishable on the grounds that at the

time Mr. Christmann was advised by Duke Ligon, there were no procedures to obtain formal written opinions, that in reliance on Mr. Ligon's advice C & W forewent another arrangement by which it could have realized the equivalent of new oil prices, that the CWC Prentice Unit was C & W's sole property and thus C & W did not treat any other properties differently, and that Mr. Ligon's advice was the only advice C & W had and it therefore did not ignore conflicting opinions. In its motion for relief C & W argues that it has newly discovered evidence which allegedly will show that Mr. Ligon was one of just a few individuals qualified to provide interpretations of the crude oil pricing regulations, that one of his official functions was to do so, and that the government intended for the oil and gas industry to rely on Mr. Ligon's advice. C & W also asserts in its motion for relief that DOE brought the remedial action in bad faith to harass Mr. Christmann because he was a prominent spokesman for the oil industry and the head of a powerful independent lobby group.

DOE, on the other hand, objects to the court's determination that C & W be relieved of liability for the other working interest owners' share of the overcharges. DOE contends that the equitable bases for the court's order of March 17, 1983, are no longer valid, pointing out that the *Sun* decision on which the court had relied, *Sun Company, Inc.*, 10 DOE ¶ 82, 542 (1983), has since been reversed, DOE Case Nos. HRR–0445 and HRD–0122 (September 2, 1983). DOE cites *Sauder v. DOE*, 648 F.2d 1341 (TECA 1981), in support of holding C & W fully liable for all overcharges, including those which went to these other interest owners, because C & W, as the operator of the unit, priced the oil. DOE contends that C & W's fiduciary duty to its co-interest owners required it to set a price in accordance with the regulations. In another motion, DOE seeks to have stricken from the record all of the affidavits submitted

---

**2.** John Christmann and J.M. Welborn, along with the Anna Mae Welborn Estate administered by J.M. Welborn, held 80 percent of the working interest in the CWC Prentice Unit. The other working interest owners were Florence S. Cherry, J. Blair Cherry, Jr. Trust, Rosemary Cherry Patterson Trust, Helen G. Cherry, A.W. Cherry Trust, and Bonanza Oil Company.

by C & W with its motion for relief on the grounds that they do not constitute new evidence, are untimely, are not part of the administrative record, are irrelevant and scurrilous, contain legal opinions, are not properly sworn or certified, or were submitted in violation of government regulations.

### B.

■ C & W's estoppel argument has been rejected before, not only in the administrative proceedings (R.27–28, 399–400) but also implicit in this court's prior rulings (orders of December 20, 1982 and March 17, 1983). It must be rejected again for a number of reasons. In the Decision and Order, the Office of Hearings and Appeals noted that C & W failed to communicate directly with the agency involved and additionally that C & W knew its contention was subject to serious legal question and in fact contrary to the viewpoint of Shell's lawyers (R.400). C & W's knowledge that Mr. Ligon's advice was questionable is clearly borne out by Mr. Christmann's own statements in the record. In a letter dated August 24, 1973, he wrote Shell:

> Having discussed this specific case with one of the Railroad Commissioners and some of the government people in Dallas, I am advised that on the basis of our necessary capital expenditures to accomplish additional recoveries and the fact that the CWC Unit has no production record prior to September 1, 1973, we *may contend* that any oil produced by said CWC Unit is NEW OIL, and not subject to the price on May 15th plus 35 cents per barrel.

(R. 63 (emphasis added)). Mr. Christmann wrote Shell again on October 18, 1973, asserting that due to the increased operating costs in obtaining secondary recovery from the unit, C & W would get no increase in revenue if it were limited to old oil prices. He then reiterated it was C & W's "conten-tion" that it was entitled to the new oil price (R. 65).

The record further shows that contrary to C & W's present allegation that Mr. Ligon's advice was the only advice it had to rely upon, Shell advised C & W otherwise. On January 11, 1974, a Shell representative wrote Mr. Christmann "As explained to you over the phone, our interpretation of the Cost of Living Council's instructions does not allow us to classify your CWC Unit ... as new oil based on the fact that we did run oil from individual wells making up the unit during 1972...." (R. 68). Shell did not begin paying the new oil price until March, 1974 (R. 22). C & W admits the procedures to obtain written interpretations were available in 1974. In light of the facts of this case then, whether written opinions were available in 1973 becomes irrelevant.[3] Furthermore, *Pennzoil* made it clear Ruling 1975–15 "simply made explicit what was implicit in the property definition from the beginning." 680 F.2d at 176 (footnote deleted). DOE's General Counsel in fact responded on five occasions during 1974 and early 1975 to requests from companies for formal agency interpretations applying the property definition in the context of a unitization. *Id.* at 162–63.

C & W's "intent" argument and affidavits in support also must be rejected in light of *Pennzoil.* The Temporary Emergency Court of Appeals refused to accord much if any weight to the memories of former agency officials or employees, *id.* at 161, and this court must do likewise. Official written interpretations were available in at least 1974, *id.* at 162, and the meaning of the property definition was always implicit within the regulations themselves, *id.* at 161 and 176.

■ Additionally and perhaps most importantly, estoppel is generally not available against the government in any event. "When the [g]overnment is unable to enforce the law because the conduct of its

---

**3.** It should also be noted that C & W is unable to show it was unsuccessful in an attempt to obtain a written interpretation during the latter part of 1973 or early 1974, because it never attempted to obtain a written interpretation at all.

agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined." *Heckler v. Community Health Services of Crawford County, Inc.,* —— U.S. ——, at ——, 104 S.Ct. 2218, 2224, 80 L.Ed.2d —— (1984).[4] In *Heckler,* the Supreme Court rejected the private party's detrimental reliance argument. The Court noted that the party's only detriment was its inability to retain money it never should have received in the first place. *Id.,* —— 104 S.Ct. at 2224. The Court also noted that there is no requirement that the government anticipate every problem that may arise in administering a complex governmental program. Finally, the Court pointed out that the party's reliance was "further undermined because the advice it received ... was oral." The Court said:

> It is not merely the possibility of fraud that undermines our confidence in the reliability of official action that is not confirmed or evidenced by a written instrument. Written advice, like a written judicial opinion, requires its author to reflect about the nature of the advice that is given to the citizen, and subjects that advice to the possibility of review, criticism and reexamination.

*Id.,* ——, 104 S.Ct. at 2227.

■ Even though C & W contends that had it not been for the advice given by Mr. Ligon, C & W would have pursued another course which would have entitled it to obtain new oil prices, estoppel still cannot be applied against the government under the facts and circumstances of this case. As mentioned earlier, Shell advised C & W through Mr. Christmann that Shell disagreed with C & W's contention it could charge new oil prices. Although Mr. Ligon was a highly placed government official, his own personal intent that his advice be

relied upon cannot bind the government, particularly the DOE, in any way, nor can other former government offficials' personal opinions as to intent of an agency bind the government. *See Pennzoil,* 680 F.2d at 161. Additionally, the advice was oral and insufficient in any event. *See Heckler v. Community Health Services,* —— U.S. at ——, 104 S.Ct. at 2227. One final point is that Mr. Christmann, who made the decision to charge the new oil prices, was a prominent spokesman for the oil industry, president of a major oil and gas lobbying group (Brief in Support of Plaintiff's Motion for Relief from Final Order, at 16), and therefore clearly a sophisticated oil field operator. As stated by the *Pennzoil* court:

> There is simply no basis in the circumstances of the present case to find unreasonableness, unfairness, or any other element of estoppel in applying the agency interpretation to the relevant period in question here. The Supreme Court has declined to recognize an estoppel against the United States under more appealing facts involving applicants for social security benefits or citizenship. Much less would we be inclined to do so on the facts here presented in favor of sophisticated oil field operators exploring the possibility of dubious regulatory leeway without even requesting an official interpretation.

680 F.2d at 176–77 (footnote deleted). *See also Department of Energy v. Louisiana,* 690 F.2d 180 (TECA 1982), in which the court said:

> Plaintiffs knew they were using a different interpretation in determining whether the oil being produced was old or new. They never sought an agency interpretation to sustain their position. Rather, they seem to have proceeded on the theo-

---

**4.** The key concept here is that it is the *public* (not its agent the government) which is the party that may not be estopped by incorrect advice or opinions of its officials. This is especially true where the advice or opinion is inconsistent with positive law, such as the regulations involved in this case. It is critical to recall that the Temporary Emergency Court of Appeals found that Ruling 1975–15, which specifically applied to C & W's situation, simply made explicit what was implicit in the regulations themselves. *Pennzoil,* 680 F.2d at 176. In other words, the plain meaning of the regulations in question always precluded C & W's interpretation that the oil could be classified as new oil. According to *Pennzoil,* C & W's contention and Mr. Ligon's opinion were simply always wrong.

ry that their interpretation was reasonable and that it would afford them protection against such a claim as now being made by DOE. This, of course, is no defense. The history of the regulations, rulings and interpretations demonstrates that there was no justification for their position.

*Id.* at 191.

C & W's claim that DOE had a political vendetta against Mr. Christmann is no more than mere speculation. That he was given *Miranda* warnings evidences only that the government was following standard procedure when a violation of law is found in order to safeguard the accused's constitutional rights (and thereby the government's case) in the event criminal proceedings are later deemed warranted. In addition, the affidavits from the L.O. Ward case have absolutely no relation to the case at hand. To allow a party to concoct a defense of political vendetta on such tenuous grounds [5] as those submitted by C & W here would virtually preclude the government from pursuing its enforcement proceedings, a result this court cannot permit.

### C.

■ The court is also of the opinion that the limited equitable relief afforded to C & W in the Order of March 17, 1983, is proper. Although C & W clearly is not entitled to equitable estoppel against the government, the equitable relief concerning the other co-interest owners' share of the overcharges is grounded not on estoppel but on constitutional considerations. In its Decision and Order, DOE recognized that in view of the small number of working interest owners, it would have been feasible to join each of them in the proceedings (R. 402). Some of the other working interest owners notified DOE on several occasions

that C & W did not represent them and had no authority to enter into any agreements on their behalf (R. 108, 109). Others notified C & W through counsel that they had defenses separate and apart from those asserted by C & W in the DOE action (R. 110–12). More importantly, these parties were totally precluded by DOE from any participation in any of the administrative proceedings and on one occasion DOE refused to allow them to attend a hearing despite the fact they had gone to the time and expense to attend. Instead, they were relegated to waiting outside without any opportunity to participate. C & W, in contrast, as a party to the administrative action, had full opportunity to present its defenses and have such considered before DOE issued the remedial order. DOE's contention is that C & W may seek contribution from the other co-interest owners, but here, there were few enough owners not to put an excessive burden on DOE in its administrative proceedings, and they should have been included. Since they have not been given notice and opportunity to respond at the administrative level, the court does not feel it is proper to hold C & W liable for their share of the overcharges and by so doing subject these other owners to possible liability to C & W for contribution. DOE is not precluded from pursuing these other owners independently of this case should it wish to do so.

### D.

■ In its order of December 20, 1982 this court ordered C & W to comply with the parties' stipulation concerning an escrow account. Apparently only one payment was made by C & W to the account. Neither C & W nor DOE reported to the court or applied for a suspension of the order or for the enforcement thereof until briefs and pleadings were filed by the par-

---

**5.** The political vendetta theory is actually not a new assertion by C & W. A review of the pleadings and evidence in this case shows that C & W previously questioned Jimmy W. Mayberry, manager of DOE's Midland office at the time of the audit of C & W, whether he knew Mr. Christmann was president of the Texas Indepen-

dent Producers and Royalty Owners Association during the time of the investigation and Mr. Mayberry testified, "I don't think we even knew it" (Oral Deposition of Jimmy W. Mayberry, at 256–57). This evidence counsels toward rejection of C & W's insinuations of a political vendetta.

ties subsequent to the December 20, 1982 order.

The court grants the motion of C & W to Stay Escrow Requirement for the following reasons:

1. This court can only assume that the failure to fund the escrow account was at least implicitly done with the assent of DOE since no timely motion for enforcement was made after C & W failed to pay the installments as required.

2. Earlier this year, C & W and Shell entered into a settlement agreement and submitted an agreed motion to dismiss Shell from this dispute, and the court entered its order of dismissal on February 3, 1984. This occurrence provides additional support for the partial remand to DOE for reconsideration of the remedy.

The settlement of the claims between Shell and C & W, the terms of which are unknown to this court, will possibly alter C & W's liability in this case, making the original order establishing the escrow account inapplicable insofar as the amount of the escrow account may be altered by plaintiffs' settlement.

Therefore, the remand to DOE is made not only in the light of decontrol but also in light of the settlement, and such remand will afford DOE an opportunity to reconsider or amend its remedial order with respect to the remedy.

### E.

In light of the above discussion and determinations, any remaining motions are therefore denied.

### IV

Therefore it is the Final Order and Judgment of this court that:

A. C & W's Motion for Relief from Final Order which is also considered as a motion to re-open under Rule 60(b), Federal Rules of Civil Procedure, is DENIED.

B. DOE's Motion for Reconsideration of the Order of March 17, 1983 is DENIED. C & W will not be ordered to account for or refund the overcharges, if any, which were paid to Florence S. Cherry, J. Blair Cherry, Jr. Trust, Rosemary Cherry Patterson Trust, Helen G. Cherry, A.W. Cherry Trust, or to Bonanza Oil Company.

C. DOE's Motion to Strike Certain Affidavits is DENIED, even though the admission of same is doubtful under Rules 56(e) and 60(b), Federal Rules of Civil Procedure. But consideration of these affidavits does not alter the judgment of this court.

D. (1) C & W's Motion to Stay Escrow Requirement is GRANTED and this case is remanded to DOE for the purpose of reconsidering its final remedial order of December 12, 1978 or issuing a new Decision and Order in accordance with this court's previous judgment of December 20, 1982 and this court's order of March 17, 1983, and with this order. In considering the issues on remand DOE shall consider the effects, if any, of decontrol and the effects, if any, of the settlement between C & W and Shell.

(2) The previous order of this court that C & W furnish an accounting to DOE is hereby suspended. It is, however, ordered that the accounting to DOE by C & W as ordered by this court on December 20, 1982, shall be furnished to DOE within 120 days after this judgment has become final.

E. In the original remedial order of DOE against C & W the following paragraph appears with respect to interest:

"Compute interest on the aforementioned refunds and make restitution to Shell of this interest amount. Simple interest will be computed at the rate of 6% per annum on refunds due from the date of the overcharges due from July 1, 1975 through January 31, 1976, and at the rate of 7% per annum on refunds due from February 1, 1976 through January 21, 1978 and at the rate of 6% per annum from February 1, 1978 and thereafter until the overcharges are fully refunded."

The court finds no basis upon which to change the amount of interest as set forth in the above paragraph. It is here ordered that any findings of overcharges that may

be determined by DOE upon remand shall bear interest in accordance with the above paragraph, and the court's judgment of December 20, 1982 is amended accordingly.

It is further Ordered and Adjudged that the relief prayed for by the plaintiffs in their original complaint is in all things denied, except as above amended, and that this action is dismissed with prejudice, and that the defendants, Department of Energy, Secretary of Energy, and Economic Regulatory Administration and its Administrator, recover of the plaintiffs their costs of action.

This Order and Judgment confirms the judgment of December 20, 1982 and the order of March 17, 1983, and this order shall constitute the Final Judgment of this court which is appealable.